# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| PLUMBERS & GASFITTERS UNION LOCAL NO. 75 HEALTH FUND, PLUMBERS LOCAL 75 EDUCATION FUND, STEVE BREITLOW, *in his capacity as Trustee*, PLUMBERS LOCAL 75 INDUSTRY DEVELOPMENT FUND, BUILDING TRADES UNITED PENSION TRUST FUND, and DOUG EDWARDS, *in his capacity as Trustee*,<br><br>            Plaintiffs,<br><br>v.<br><br>MORRIS PLUMBING, LLC,<br><br>            Defendant. | Case No. 23-CV-616-JPS<br><br>**ORDER** |

1. **INTRODUCTION**

In May 2023, Plaintiffs Plumbers & Gasfitters Union Local No. 75 Health Fund, Plumbers Local 75 Education Fund, Steve Breitlow (in his capacity as Trustee), Plumbers Local 75 Industry Development Fund, Building Trades United Pension Trust Fund, and Doug Edwards (in his capacity as Trustee) (collectively, "Plaintiffs") sued Defendant Morris Plumbing, LLC ("Defendant") seeking "unpaid contributions, interest, and statutory penalties for the period of February 1, 2020 to December 31, 2022." ECF No 28 at 1.

Plaintiffs now move the Court to recognize and "enforce the settlement agreement that the parties reached on January 8, 2024 through

an exchange of emails by their counsel." ECF No. 27 at 1. For the reasons discussed herein, the Court will grant the motion.

## 2. BACKGROUND

On November 28, 2023, Defendant's counsel notified Plaintiffs' counsel that Defendant would be "willing to settle if [the parties] can get the payments to 48 months." ECF No. 29-1 at 1. Defendant's counsel inquired as to whether that could be "a possibility." *Id.*

In response, Plaintiffs' counsel offered the following:

> I would be willing to recommend to the trustees the following terms:
> 1. Payment of all contributions for Degen and Wheeler's work hours for 2/1/20 to 12/31/22, plus 6% interest so that payments total $165,615.12, to be repaid over 48 months.
> 2. [Defendant] acknowledges liability for liquidated damages equal to 20% of the unpaid contributions. If [Defendant] timely makes each of the payments, and remains current for the duration of the 48 months payment plan, it will be eligible to apply for a waiver of liquidated damages. Such a waiver is routinely granted as a matter of course, but is not guaranteed. If there are any audits for time periods after December 31, 2022, [Defendant] would need to take care of any delinquencies identified in order to receive the waiver of liquidated damages.
> 3. [Defendant] in return gets a release through December 31, 2022. It does not get a release of any claims for withdrawal liability.
>
> Please confirm acceptance of these terms, so that I can postpone tomorrow's deposition.
> Yingtao Ho

*Id.* Defendant's counsel replied: "[Defendant] is out this afternoon, so I won[']t have an answer. Let's push the depo out a week? Also, do you have

language you can present so I can explain and understand the liquidated damages proposal? Ron." ECF No. 29-2 at 3. Plaintiffs' counsel agreed to send some sample language to Defendant's counsel as requested. *Id.*

On December 1, 2023, Plaintiffs' counsel emailed the following:

Ron:

I have contacted the union as to whether it recognizes [Defendant] to have terminated the CBA on May 31, 2023. Because the Plumbers Local 75 Funds trustees meet on December 11, 2023, and it would be good to have a proposed settlement for them to approve, I am sending you two versions of the liquidated damages waiver language to be applied depending on whether the termination of the CBA is recognized, as well as proposed release language.

Yingtao Ho

*Id.* at 2. The document that Plaintiffs' counsel attached to his December 1, 2023 email included the following release language, in addition to two paragraphs concerning waiver of liquidated damages:

**Plaintiffs' Release of Claims.** For valuable consideration from Defendants as stated above, Plaintiffs hereby releases [sic] all claims of whatever nature that each may have against Defendants [sic] through December 31, 2022, including all claims for unpaid contributions, interest, and/or liquidated damages arising under ERISA §§ 502 and 515 (29 U.S.C. §§ 1131, 1145), LMRA § 301 (2 U.S.C. § 185), Wis. Stats. §§ 895.446 and 943.20, or any other legal theory as well as any and all claims for attorneys' fees and costs. Notwithstanding the foregoing, this Agreement does not (a) affect those rights or claims that arise after the execution of this Agreement; (b) waive any rights by the Plaintiffs to assess withdrawal liability based on contributions that [Defendant] either did, or that Plaintiffs contend it should have[,] remitted on or before December 31, 2022; or (c) affect those rights or claims that cannot be waived by law.

ECF No. 29-3 at 1. On December 5, 2023, Defendant's counsel responded:

> Yingtao, I have attached the withdrawal letter. I will need better language on the liquidated damages. The trustees should be able to commit to waiver as long as all payments are made. I don't think my guy will agree to wait and see if it is waived. Can we work through that?
>
> Ron

ECF No. 29-2 at 1. Plaintiffs' counsel responded by email as follows:

> I can propose to the trustees that upon [Defendant] making all settlement payments, and provided [Defendant] pays the close-out audit and/or remains current for the duration of the payment plan or the duration it is obligated to remit contributions, whichever is shorter; it may apply for a waiver of liquidated damages, which the Trustees shall grant. (I am still waiting to hear back from the union on whether it accepts that [Defendant] has properly terminated the CBA).
>
> If this language is acceptable, I can again postpone tomorrow's deposition; and I will notify you on December 13th or 14th the extent that the Trustees adopted by recommendations on a settlement with [Defendant].

*Id.* That same day, Defendant's counsel responded, "I can recommend that language, so please see if the trustees can agree to it. Ron." *Id.*

On December 13, 2023, Plaintiffs' counsel circled back:

> Attorney Stadler:
>
> The Trustees reject [Defendant's] settlement proposal, and counter-offers [sic] the same proposal, except that the full amount of contributions and 6% interest must be paid over a period of 36 months rather than 48 months. The Trustees agreed that if [Defendant] pays the full amount of contributions and 6% interest over a period of 36 months, and remains current for 36 months, the liquidated damages waiver will be automatic.

Page 4 of 16
Case 2:23-cv-00616-JPS   Filed 04/18/24   Page 4 of 16   Document 33

> If [Defendant] wants 48 months to repay the contributions and interest, the interest rate would snap back to 18%, and no liquidated damages waiver would be available. The Trustees also rejected the possibility of a 48 months payment plan with 6% interest and a LD waiver, but [Defendant] must pay some additional interest during the 48 months payment plan.
>
> You can have until January 3rd to accept this proposal, which is the best one that [Defendant] will receive from the Trustees.
> . . .
> Yingtao Ho

ECF No. 29-4. On January 8, 2024, Defendant's counsel responded: "Yingtao, sorry for the delays but it has been hard to get all these pieces in place. [Defendant] will agree to pay $165,615.12 paid over a period of 36 months with the terms you offered. Can you please forward a written settlement agreement. Ron." ECF No. 29-5. The following day, Plaintiffs' counsel sent the draft settlement agreement by email. ECF No. 29-6 at 1.

Ten days later, Defendant's counsel emailed Plaintiffs' counsel the following:

> Yingtao, I have gone through the agreement and paragraph 5 causes concerns. Are you taking the position that more money is owed for 2023? If so we need to discuss that and agree to it. We do not want to settle a case just to be back into another one. It was my understanding that the $165,000 involved ALL claims by [Plaintiffs].

*Id.* On January 19, 2024, Plaintiffs' counsel responded as follows:

> Ron:
>
> It has always been a part of [Plaintiffs'] proposal that the release is only through December 31, 2022, so that [Defendant] remains liable for potential contributions that are owed after that date. See paragraph 3 of the proposal below [referring to Plaintiffs' counsel's November 28, 2023 email, which is excerpted *supra*]. The release language that I sent to

> you on December 1, 2023, which you stated you would recommend to [Defendant], stated:
>
> **Plaintiffs' Release of Claims**. For valuable consideration . . . , Plaintiffs hereby releases [sic] all claims . . . that each may have against Defendants *through December 31, 2022* . . . .
>
> [Plaintiffs] have to settle cases this way because no audit has been conducted for the period after December 31, 2022, so . . . it is unknown what if anything [Defendant] owes for the time period after December 31, 2022, and therefore impossible for [Plaintiffs] to agree to a settlement, and release claims, for the time period after December 31, 2022.

ECF No. 31-3 at 1. Defendant has since refused to sign the settlement agreement. ECF No. 28 at 1.

### 3. LAW AND ANALYSIS

"[A] district court possesses the inherent or equitable power summarily to enforce an agreement to settle a case pending before it." *Wilson v. Wilson*, 46 F.3d 660, 664 (7th Cir. 1995) (collecting cases). "State contract law governs issues concerning the formation, construction, and enforcement of settlement agreements." *Beverly v. Abbott Lab'ys*, 817 F.3d 328, 333 (7th Cir. 2016) (citing *Sims-Madison v. Inland Paperboard & Packaging, Inc.*, 379 F.3d 445, 448 (7th Cir. 2004)). The parties do not dispute that Wisconsin law governs this issue, "so [the Court] too will look to that body of substantive law." *Id.*

"Under Wisconsin law, a valid settlement agreement requires an offer, an acceptance, and consideration all resulting from a meeting of the minds as to the essential terms of the agreement." *Mitchell v. Meyer*, No. 18-cv-311-jdp, 2021 U.S. Dist. LEXIS 242049, at *3–4 (W.D. Wis. Dec. 20, 2021) (citing *Am. Nat'l Prop. & Cas. Co. v. Nersesian*, 689 N.W.2d 922, ¶ 16 (Wis. Ct. App. 2004)). Additionally, Wisconsin law provides that "settlement

agreements are enforceable only if they are (1) made in writing; or (2) made in court and entered in the minutes or recorded." *Id.* at *4 (citing Wis. Stat. § 807.05). "It is a well-settled principle in the law that compromises of disputes are favored. When such a compromise is put into writing as a final settlement of a dispute, it will be upheld by the courts as written, if the intent of the parties is clearly disclosed in such agreement." *Schilling v. Milwaukee Bedding Co.*, 221 N.W. 743, 746 (Wis. 1928).

If made in writing, the agreement must also be "subscribed by the party to be bound thereby or the party's attorney"—*i.e.*, signed. Wis. Stat. § 807.05. "[A] party's or attorney's typed or printed name, if affixed with proper authority, satisfies [the] . . . statutory requirement that a document be 'subscribed.'" *Waite v. Easton-White Creek Lions, Inc.*, 709 N.W.2d 88, ¶ 12 (Wis. Ct. App. 2005) (citing *Kocinski v. Home Ins. Co.*, 433 N.W.2d 654, 657–58 (Wis. Ct. App. 1988)). An attorney's name or initials in an email signature therefore suffice for purposes of the requirement that a written settlement agreement be "subscribed." *Id.*; *HSBC Mortg. Servs. v. Daya*, No. 16-CV-80-JPS, 2016 U.S. Dist. LEXIS 169239, at *25 (E.D. Wis. Dec. 7, 2016*); Iliadis v. Four Lakes Educ., Inc.*, No. 19-cv-232-wmc, 2020 U.S. Dist. LEXIS 13421, at *13 (W.D. Wis. Jan. 28, 2020) ("[F]ederal and state courts have clarified that even emails from counsel authorized to act on behalf of their clients can satisfy the subscription requirement) (citing *Sands v. MH Private Equity Fund, LLC*, 798 N.W.2d 320, ¶ 14 (Wis. Ct. App. 2011); *Centrifugal Acquisition Corp. v. Moon*, No. 09-C-327, 2013 U.S. Dist. LEXIS 11579, at *4 (E.D. Wis. Jan. 29, 2013); and *HSBC*, 2016 U.S. Dist. LEXIS 169239, at *25).[1]

---

[1]Defendant does not dispute that counsels' email signatures sufficed for the subscription requirement. Accordingly, the Court discusses this aspect of the analysis no further.

The parties do not dispute that they agreed to settle this matter. It is instead the scope of that agreement—specifically, the release of liability portion—that is at issue; while Plaintiffs contend that their agreement involved a release of claims through December 31, 2022, ECF No. 28 at 1, Defendant contends that it did not agree to this "limited release" and instead agreed to settle "all claims by Plaintiffs," not just those through December 31, 2022, ECF No. 30 at 8.

As an initial matter, Defendant's characterization of counsels' exchanges is at various points in tension with the exhibits demonstrating those exchanges. For example, Defendant contends that prior to January 8, 2024, the parties never "discussed" "non-monetary settlement conditions" such as the release. ECF No. 30 at 9. Similarly, Defendant contends that apart from the inclusion of the release provision in the document attached to Plaintiffs' counsel's December 1, 2023 email, the parties "otherwise never talked about the scope of the release in any of their email correspondences." *Id*. These contentions are factually questionable; they suggest that the limited release provision was never brought up in email apart from in the attachment, but that is not true. The release was listed as item three in the body of Plaintiffs' counsel's November 28, 2023 email.

Defendant argues that "the only binding settlement agreement was for a payment of $165,615.12 in exchange for a release of all claims as there was no meeting of the minds as to the scope of the settlement release." ECF No. 30 at 7 (capitalization omitted). The Court disagrees. Both parties seem to agree, at least impliedly, that the release of claims was an essential term of the agreement such that the parties needed to have a meeting of the minds with respect to it. *Mitchell*, 2021 U.S. Dist. LEXIS 242049, at *3–4 (citing *Nersesian*, 689 N.W.2d, ¶ 16). The email exchanges demonstrate that

such a meeting of the minds occurred with respect to the qualified release of claims. Plaintiffs' counsel clearly conveyed that, for valuable consideration to Defendant, Plaintiffs would release claims through December 31, 2022. That term was clearly presented from the beginning and was later reiterated in the document attached to the emails. Defendant's counsel expressed no issue with that term and proceeded to request a "written settlement agreement" "with the terms [Plaintiffs' counsel] offered." ECF No. 29-5. At no point until he received the formalized draft settlement agreement did Defendant's counsel object to the release provision. In the email exchanges, Defendant's counsel only ever took issue with the issue of liquidated damages, but he expressed no dissatisfaction with respect to the limited release of claims proposed. ECF No. 32 at 5 ("[Defendant] objected to the liquidated damages waiver language . . . , but not the proposal to release claims through December 31, 2022."); *cf. Loraas v. Climate Corp.*, No. 19-cv-825-jdp, 2020 U.S. Dist. LEXIS 266705, at *8 (W.D. Wis. May 19, 2020) ("[T]he fact that Loraas noted his agreement with one of the nonmonetary components of Climate's offer . . . suggests that he wasn't accepting the other terms.").

Defendant now argues that it only ever agreed to a full, unqualified release of claims, but at no point was a full, unqualified release of claims ever even put on the table, by either party. The impression given, in fact, is either that Defendant's counsel automatically acceded to the qualified release without protestation, or that he overlooked the scope of the release and erroneously assumed that any release of claims would be unqualified. But that does not necessarily mean that there was no meeting of the minds with respect to the release provision. The meeting of the minds is evidenced by what the parties put forth objectively, not what they subjectively expect

and understand but fail to express. "Wisconsin courts view the intent [to be bound] inquiry through an objective lens by looking at the parties' words, both written and oral, and their actions." *HSBC,* 2016 U.S. Dist. LEXIS 169239, at *23 (citing *Nersesian*, 689 N.W.2d at 928). "An intent to be bound by contract does not invite a tour through [the party's] cranium . . . The status of a document as a contract depends on what the parties express to each other and to the world, not on what they keep to themselves." *Id.* at 23–24 (quoting *Skycom Corp. v. Telstar Corp.*, 813 F.2d 810, 814 (7th Cir. 1987)); *Mgmt. Comp. Servs. v. Hawkins, Ash, Baptie & Co.*, 557 N.W.2d 67, 75 (Wis. 1996) (meeting of the minds "does not mean that parties must subjectively agree to the same interpretation at the time of contracting. Instead, mutual assent is judged by an objective standard . . . ").

Defendant argues that "[w]ithout a complete and total release of all claims[,] [it] was not willing to settle," ECF No. 30 at 2, but nothing in Defendant's email communications until January 19, 2024 provides support for that position. Any expectation or intention that Defendant's counsel had to agree only to an unqualified release of claims was "kept to [him]sel[f]"; meanwhile, his conduct in the email exchanges objectively indicated assent to the qualified release term offered. *HSBC,* 2016 U.S. Dist. LEXIS 169239, at *23 (citing *Nersesian*, 689 N.W.2d at 928).[2] What Defendant intended to agree

---

[2] Although it does not ultimately affect the Court's analysis or disposition, Plaintiffs in their reply cite to a case that none of the Court's staff were able to locate. ECF No. 32 at 5 ("*Caserage Tech Corp. v. Caserage Labs, Inc.*, 972 F.3d 799, 803 (7th Cir. 1992) (The District Court correctly found the parties agreed to permit shareholder rights when one party stated to the other its understanding that a settlement agreement included shareholder rights, and the other party did not say anything to repudiate that understanding.)."). The citation goes to a case of a different name, from a different year, and from a different circuit. Court staff also could not locate the case by searching, either on Google or in legal databases, the

to, but didn't actually express to Plaintiffs, is ultimately of little consequence. *Marion v. Orson's Camera Ctrs. Inc.*, 138 N.W.2d 733, 736–37 (Wis. 1966) ("[T]he office of judicial construction is . . . to determine . . . not necessarily what [the parties] intended to agree to, but what, in a legal sense, they did agree to . . . .") (quoting *Wis. Marine & Fire Ins. Co. Bank v. Wilkin*, 69 N.W. 354, 354 (Wis. 1897)).

Further, nothing in the record suggests that the parties had "the understanding during th[e] [negotiation] process that the agreement [wa]s to be embodied in a formal written document and that neither party [wa]s to be bound until he executes the document." *HSBC*, 2016 U.S. Dist. LEXIS 169239, at *24 (quoting *Gruen Indus., Inc. v. Bille*r, 608 F.2d 274, 277 (7th Cir. 1979)). This matters because "[e]ven if parties agree . . . on all the terms of a contract, if they understand that the execution of a formal document shall be a prerequisite to their being bound there is no contract until the document is executed." *Fond Du Lac Bumper Exch., Inc. v. Jui Li Enter. Co.*, Nos. 9-CV-852, 13-CV-987, and 14-CV-1061, 2017 U.S. Dist. LEXIS 142470, at *16 (E.D. Wis. Aug. 8, 2017) (quoting *Lambert Corp. v. Evans*, 575 F.2d 132, 135 (7th Cir. 1978)). Objectively, no such understanding was present here. *Cf. id.* ("Here, the settlement agreement provides that it will not be 'deemed executed' until 'the last date of signature by Settling Defendant . . . ' and that its terms are not binding on the parties until then."). Accordingly, "the fact that a written agreement would come later did not prevent the creation

---

case name provided in conjunction with the purported publication year. If this is, as the Court suspects, an instance of provision of falsified case authority derived from artificial intelligence, Plaintiffs' counsel is on notice that any future instance of the presentation of nonexistent case authority will result in sanctions.

of an enforceable agreement at the moment of" Defendant's acceptance on January 8, 2024. *HSBC,* 2016 U.S. Dist. LEXIS 169239, at *29.

To the extent that this limited release was communicated to it, Defendant further argues, it was "vague and never described the scope of the proposed release." ECF No. 30 at 8 (citing *Loraas,* 2020 U.S. Dist. LEXIS 266705, at *7). Again, the Court disagrees; counsels' exchanges cannot support that contention. It is true that "[v]agueness or indefiniteness concerning a material term prevents the creation of an enforceable contract." *Loraas*, 2020 U.S. Dist. LEXIS 266705, at *7 (quoting *Paul R. Ponfil Tr. v. Charmoli Holdings, LLC*, 935 N.W.2d 308, ¶ 18 (Wis. Ct. App. 2019)). But there is no vagueness issue here. The scope of the release—that it extended only through December 31, 2022—was expressly and unambiguously set forth in both the emails themselves and in the attached document containing the provision "Plaintiffs' Release of Claims." ECF No. 29-3. There was nothing vague about that express qualification, and there was no room for interpretation about what it meant.

Defendant also argues that when its counsel agreed by email to the "terms [Plaintiffs' counsel] offered," that referred only to "the terms set forth in the prior email," which did not re-state the release of claims provision, as opposed to including the terms conveyed in earlier emails to which Defendant's counsel never took issue. ECF No. 30 at 8–9. Defendant contends that this is the only "logical" inference that can be made. *Id*. at 8. The Court disagrees. Defendant's interpretation is simply not believable; Defendant apparently wants the Court to believe that it requested a formalized, draft settlement agreement without ever having explicitly agreed to its own consideration for settling (*i.e.*, the release of claims). Moreover, Plaintiffs' counsel had "counter-offer[ed] the *same proposal*" with

Page 12 of 16

Case 2:23-cv-00616-JPS    Filed 04/18/24    Page 12 of 16    Document 33

changes only to the length of the payment term and its effect on interest and the possibility of a liquidated damages waiver. ECF No. 29-4 (emphasis added).

It is also relevant that Plaintiffs were not even in a position to make an informed decision to release their claims after December 31, 2022 because "to date they have not audited, and therefore have not determined whether [Defendant's] self-reporting was inaccurate for the time period after December 31, 2022." ECF No. 32 at 2. In construing the scope of a contract, including a release of liability, "courts consider 'not only the language of the release, but also the surrounding conditions and circumstances.'" *PNC Bank v. Amcraft Bldg. Prods. Co.*, No. 10-CV-173, 2012 U.S. Dist. LEXIS 124272, at *15 (E.D. Wis. Aug. 30, 2012) (quoting *Rebholz v. Lakeland Leisure Corp.*, 805 N.W.2d 734, ¶ 9 (Wis. Ct. App. 2011)) (internal quotation marks omitted). The fact that Plaintiffs did not yet even know whether they had viable claims arising after December 31, 2022 supports the conclusion that no full, unqualified release of claims was agreed upon by the parties for settlement of this case. That conclusion is further supported by the fact that, as discussed, neither party ever even mentioned a full release of claims as a possibility in their negotiations. *See PNC Bank*, 2012 U.S. Dist. LEXIS 124272, at *16 (release of claims not construed to extend to Amcraft where counsel for the parties never "mentioned or discussed" the Amcraft account when discussing the settlement agreement and the agreement "itself does not specifically name Amcraft").

For all these reasons, the Court will grant Plaintiffs' motion to enforce the settlement agreement into which the parties entered by email.

4. **CONCLUSION**

"Some litigants in pursuing settlement of their claims hold the belief that they can change their mind at any time before they actually sign the settlement agreement . . . . [T]hat perception is often unfounded in the law." *Pohl v. United Airlines, Inc.*, 213 F.3d 336, 337 (7th Cir. 2000). Similarly, a litigant who thinks he can reserve closer inspection of the terms to which he has assented until receipt of a formalized draft agreement may discover that he has already, in fact, agreed to something he may come to regret. But that regret is not a legitimate basis to avoid enforcement of the agreement or to attempt to re-write it, for "not being aware of [a contract's] unambiguous terms does not relieve a party from being bound by [it] . . . ." *Raasch v. City of Milwaukee*, 750 N.W.2d 492, ¶ 10 (Wis. Ct. App. 2008) (citing *Hennig v. Ahearn*, 601 N.W.2d 14, 18 (Wis. Ct. App. 1999)).

In light of the enforcement of this settlement, the Court will order that the Clerk of Court administratively close this action. The Court will also deny as moot Plaintiff's motion to compel discovery, ECF No. 18. The parties are further ordered to promptly file appropriate dismissal paperwork.

Accordingly,

**IT IS ORDERED** that Plaintiffs Plumbers & Gasfitters Union Local No. 75 Health Fund, Plumbers Local 75 Education Fund, Steve Breitlow, in his capacity as Trustee, Plumbers Local 75 Industry Development Fund, Building Trades United Pension Trust Fund, and Doug Edwards, in his capacity as Trustee's motion to enforce settlement agreement, ECF No. 27, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiffs Plumbers & Gasfitters Union Local No. 75 Health Fund, Plumbers Local 75 Education Fund, Steve Breitlow, in his capacity as Trustee, Plumbers Local 75 Industry

Development Fund, Building Trades United Pension Trust Fund, and Doug Edwards, in his capacity as Trustee's motion to compel discovery, ECF No. 18, be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that the Clerk of Court shall administratively close this action pending the filing of appropriate dismissal paperwork; and

**IT IS FURTHER ORDERED** that the Court finds the parties' settlement agreement to include the following:

1. Defendant Morris Plumbing, LLC shall pay the amount of $165,615.12 to Plaintiffs over a period of 36 months, which will start on the date of the entry of this Order;

2. Defendant Morris Plumbing, LLC acknowledges that it owes to Plaintiffs liquidated damages of $30,496.77. Upon Defendant Morris Plumbing, LLC making all settlement payments, and provided Defendant Morris Plumbing, LLC pays the close-out audit and/or remains current for the duration of the payment plan or the duration it is obligated to remit contributions, whichever is shorter, it may apply for a waiver of liquidated damages which the Trustees will grant;

3. For valuable consideration from Defendant Morris Plumbing, LLC as stated above, Plaintiffs hereby release all claims of whatever nature that each may have against Defendant Morris Plumbing, LLC through December 31, 2022, including all claims for unpaid contributions, interest, and/or liquidated damages arising under ERISA §§ 502 and 515 (29 U.S.C. §§ 1132, 1145), LMRA § 301 (29 U.S.C. § 185), Wis. Stats. §§ 895.446 and 943.20, or any other legal theory as well as any and all claims for

attorneys' fees and costs. Notwithstanding the foregoing, this Agreement does not (a) affect those rights or claims that arise after the execution of this Agreement; (b) waive any rights by Plaintiffs to assess withdrawal liability based on contributions that Defendant Morris Plumbing LLC, either did, or that Plaintiffs contend it should have remitted on or before December 31, 2022; or (c) affect those rights or claims that cannot be waived by law.

Dated at Milwaukee, Wisconsin, this 18th day of April, 2024.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

Page 16 of 16
Case 2:23-cv-00616-JPS    Filed 04/18/24    Page 16 of 16    Document 33